SCOTT N. SCHOOLS, SCSBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Chief, Civil Division
EDWARD OLSEN, CSBN 214150
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6915
    FAX: (415) 436-6927

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HAIQI CHEN, | No. C 07-2462 SC |
|     Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS** |
| United States Citizenship and Immigration Services ("USCIS"); Department of Homeland Security ("DHS"); Department of Justice ("DOJ"); Federal Bureau of Investigation ("FBI"), | Date: November 16, 2007<br>Time: 10:00 a.m. |
|     Defendants. | |

## I. INTRODUCTION

The plaintiff is a native of China who filed a Form I-485 application to adjust his status to lawful permanent resident with the United States Citizenship and Immigration Services (USCIS) on July 3, 2003. The I-485 application is pending with USCIS. On May 8, 2007, plaintiff filed a mandamus action, seeking to compel the defendants to adjudicate his I-485 application. The plaintiff alleges that the defendants have violated the Administrative Procedures Act (APA) by unreasonably delaying the adjudication of the I-485 application and that he is entitled to an order directing the USCIS to adjudicate the application.

This Court has scheduled a hearing on November 16, 2007 on the defendants' motion to dismiss. The defendants hereby submit their motion to dismiss.

## II. STATUTORY AND REGULATORY FRAMEWORK

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Attorney General to adjust to permanent residence status certain aliens who have been admitted into the United States. However, adjustment of status is committed to the Attorney General's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled int the United States ... *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added); *see also Elkins v. Moreno*, 435 U.S. 647, 667 (1978) ("Adjustment of status is a matter of grace, not right.").

Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. Nor is any time frame specified in the regulations setting forth the procedures for aliens to apply to adjust status. *See* 8 C.F.R. § 245 et. seq.

## III. BACKGROUND CHECKS

After an I-485 application is filed, USCIS, in conjunction with the Federal Bureau of Investigation (FBI), conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that he or she is not a risk to national security or public safety. *See* Declaration of Gerald Heinauer ¶ 12.[1] USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. *See* 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the

---

[1] When considering a motion to dismiss pursuant to Rule 12(b)(1), the district court may review evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction without converting the motion to one for summary judgment. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) ( "when a question of the District Court's jurisdiction is raised ⋯ the court may inquire by affidavits or otherwise, into the facts as they exist." ); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment).

provisions of this chapter in the interest of the internal and border security of the United States").

These checks currently include: (1) an FBI name check, which is run against FBI investigative databases compiled by law enforcement agencies including administrative, applicant, criminal, personnel and other files; (2) an FBI fingerprint check, which provides information relating to criminal background within the United States; and (3) a check against the Interagency Border Inspection System (IBIS), which contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies, and is used to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. *See* Heinauer Declaration ¶ 12.

These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. Heinauer Declaration ¶ 13. These law enforcement checks have also resulted in aliens being arrested by law enforcement agencies or charged with removability from the United States. *See id.* In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone. *See id.*

Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving an adjudication of their immigration application as quickly as in the past. Heinauer Declaration ¶ 14. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication of applications, USCIS is currently working with the Department of Justice and other agencies to develop improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. *See id.* However, the public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petitions and before it issues any immigration status documents to such persons. *See id.* USCIS will

continue to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible alien must wait longer than is reasonably necessary to receive a decision on his or her application.

### IV. VOLUME OF APPLICATIONS

The plaintiff's I-485 application for adjustment of status is being processed by the Nebraska Service Center, a component of USCIS. Declaration of Gerald Heinauer ¶ 3. The Nebraska Service Center currently has approximately 73,135 employment-based I-485 applications pending, about 17,741 of which are still awaiting completion of FBI name checks before they can be adjudicated. Heinauer Declaration ¶ 21. Of an additional 81,970 (estimated) pending asylum/refugee-based I-485 applications, there are approximately 10,340 awaiting FBI name check responses. *See id.* Of a total figure of 84,355 naturalization filings currently being processed at the Nebraska Service Center, there are approximately 21,728 awaiting responses on FBI name checks. *See id.*

### V. THE PLAINTIFF'S I-485 APPLICATION

The plaintiff is a native of China and citizen of Canada. Heinauer Declaration ¶ 3. He filed a I-495 application with USCIS, at the California Service Center, on July 3, 2003. *Id*. The required background checks were then initiated, including an FBI name check request submitted to the FBI on July 11, 2003. Heinauer Declaration ¶ 19. The name check remains pending. *Id.* The plaintiff's I-485 application was reviewed by an adjudications officer at the California Service Center in August, 2006. Heinauer Declaration ¶ 9. The plaintiff was fingerprinted on September 3, 2004, October 6, 2005, and March 7, 2007.[2] Heinauer Declaration ¶ 16. Due a realignment of work, the plaintiff's application was transferred to the Nebraska Service Center for completion of the adjudication on March 12, 2007. Heinauer Declaration ¶ 9. The plaintiff's I-485 application was again reviewed by an adjudications officer at the Nebraska Service Center in July 2007, and a request for missing evidence was issued. *Id.* The plaintiff responded to the request for evidence on August 17, 2007, and submitted additional evidence in June, 2007. *Id.* The plaintiff's

---

[2]The plaintiff was fingerprinted on multiple occasions to ensure that the fingerprints are current when the case can be finally adjudicated. Heinauer Declaration ¶ 16.

MOTION TO DISMISS
C07-2462-SC                                       4

preliminary IBIS checks have been completed. Heinauer Declaration ¶ 17. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary. *Id.* An adjudications officer then pre-adjudicated the plaintiff's application on August 27, 2007, to ensure that the case would be adjudication-ready once the background and security checks are completed. Heinauer Declaration ¶¶ 9, 10.

## VI. ARGUMENT

### A. This Court Should Dismiss The FBI

Since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. *See* 6 U.S.C. §§ 271(b)(5), 557. Thus, the only relevant defendants here is USCIS, which is within the Department of Homeland Security, and the FBI should be dismissed. *See Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *6-7 (N.D. Cal. July 13, 2007); *Dmitriev v. Chertoff,* No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007); *Clayton v. Chertoff*, C-07-2781-CW (N.D. Cal. Oct. 1, 2007).

### B. This Court Lacks Jurisdiction Under the APA and the Mandamus Statute

Mandamus is reserved for those situations in which the agency has a ministerial, nondiscretionary duty that is so plainly prescribed as to be free from doubt. *See Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). A ministerial act is "devoid of the exercise of judgment or discretion." *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987). A duty is ministerial "where the officer can do only one thing." *Work v. United States*, 267 U.S. 175, 177 (1925). Courts have consistently recognized that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

Similarly, a court has jurisdiction to act under section 706(1) of the APA (authorizing courts to "compel agency action . . . unreasonably delayed") only when "an agency is compelled by law to act within a certain time period," but the agency has failed to comply with that time period. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004). As an example, the Supreme Court in *Norton* stated that the Federal Communications Commission's failure to

1  establish regulations within 6 months of the date of the Telecommunications Act of 1996, as
2  required by the Act, "would have supported a judicial decree under the APA requiring the prompt
3  issuance of regulations." *See id.* "The principal purpose of the APA limitations we have
4  discussed – and of the traditional limitations upon mandamus from which they are derived – is to
5  protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial
6  entanglement in abstract policy disagreements which courts lack both expertise and information to
7  resolve." *Norton*, 542 U.S. at 66.
8      The adjudication of an adjustment of status application is a matter committed to the discretion
9  of USCIS. *See* 8 U.S.C. § 1255(a) (an alien's status "may be adjusted by the Attorney General, in
10 his discretion and under such regulations as he may prescribe."); 8 C.F.R. § 103.2(b)(7) ("[The
11 agency] may direct any necessary investigation"); 8 C.F.R. § 103.2(b)(18) ("A district director
12 may authorize withholding adjudication"); 8 C.F.R. § 245.6 (an "interview may be waived . . .
13 when it is determined by the Service that an interview is not necessary"). Moreover, the
14 processing of an individual's name check is a matter committed to the discretion of the FBI. *See*
15 *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at * 6 (S.D. Tex. May 24, 2007) ("The
16 evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but
17 also to the FBI's exercise of discretion in determining the timing for conducting the many name
18 check requests that it receives and the manner in which to conduct those checks."); *see also*
19 *Shalabi v. Gonzales*, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006) ("A background check
20 that is rushed or incomplete due to an artificial court imposed deadline would not meet the
21 statutory and regulatory requirements of a 'full criminal background check' before the USCIS can
22 make a determination on an application."); *id*. ("There is no statute or regulation which imposes a
23 deadline for the FBI to complete a criminal background check."); *Sozanski v. Chertoff*, No. 06-
24 CV-0993 (N.D. Tex. Dec. 11, 2006) (holding that district court lacks jurisdiction to compel the
25 FBI to perform name checks in adjustment of status cases).
26     The agencies' discretion precludes judicial review of both the ultimate decision on an
27 individual's I-485 application *and* the process by which the decision is reached. In *Heckler v.*
28 *Chaney*, 470 U.S. 821 (1985), the Supreme Court interpreted 5 U.S.C. § 701(a)(2) to mean that

MOTION TO DISMISS
C07-2462-SC                       6

"review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830. As the Court went on to explain, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id.* (emphasis added).

Here, there are no statutory or regulatory provisions which provide a "meaningful standard" against which to measure the time it takes the FBI to complete a name check or for USCIS to process an application. Without any mandatory time frames, in order to determine that the agencies have "unreasonably delayed" adjudication of the plaintiff's application, this Court would have to create a temporal standard from thin air. This is a perilous task given the national security considerations that affect the FBI's and USCIS's respective roles in the I-485 process. Although USCIS must eventually notify an applicant of its decision on a I-485 application, *see* 8 C.F.R. § 245.2, the applicant is not entitled to a decision within any particular time frame. *See Sharif v. Chertoff*, ___ F. Supp. 2d ___, 2007 WL 2045489, at * 5 (N.D. Ill. July 18, 2007).

Congress clearly knows how to provide a deadline for processing an application for an immigration benefit, but chose to remain silent in the context of I-485 applications. For example, Congress provided that an application for naturalization must be processed within 120 days after the date the applicant is examined. *See* 8 U.S.C. § 1447(b). The Immigration and Nationality Act provides no time frame for processing an I-485 application. Accordingly, under *Norton*, this Court is unable, under either the mandamus statute or the APA, to direct USCIS to act within a specific time period on the plaintiff's I-485 application. *See Norton*, 542 U.S. at 65.

Finally, the granting of a writ of mandamus to compel the processing of routine immigrant applications out of order would have several negative repercussions. First, it would unfairly favor applicants with the means to hire an attorney and file federal mandamus actions. Applicants without the resources to bring such actions would suffer further delays in the processing of their applications, because other later-filed applications would be given court-mandated preferential treatment. Second, allowing immigration applicants to use mandamus to "cut in line," would open the floodgates for immigration-related mandamus actions. The use of mandamus in immigration

matters would shorten the delay for some, only to lengthen it for others. An equitable solution to the processing delays lies not with the Judicial branch, but with the Executive and Legislative branches of government, for only these branches of government can properly address the budget and staffing issues that have caused the delays to occur.

In sum, the defendants have no clear, mandatory duty to process a name check or to adjudicate the plaintiff's I-485 application within any particular time frame. In failing to specify any temporal limitations, and in leaving it to the agency to prescribe any appropriate regulations, Congress vested the agencies with complete discretion over the process of adjudicating an I-485 application. Accordingly, this Court lacks jurisdiction over the plaintiff's mandamus and APA claims. *See Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007); *Zheng v. Reno*, 166 F. Supp. 2d 875, 880-81 (S.D. Cal. 2001) ("Matters within the INS's discretion are not reviewable under the mandamus statute. Thus, courts in this district have repeatedly held that mandamus relief is unavailable for delays in the adjustment process."); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006) (concluding that § 1255(a) vests USICS with discretion over the entire process of adjustment application adjudication); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1351 (S.D. Fla. 2007) ("Sections 242 and 245 of the Immigration and Nationality Act . . . preclude judicial review of any discretionary "decision or action' of the Attorney General in immigration matters includ[ing] the pace at which immigration decisions are made.").[3]

**C.  8 U.S.C. § 1252(a)(2)(B)**

This Court is also barred from reviewing this action under 8 U.S.C. § 1252(a)(2)(B), which provides:

---

[3] The defendants acknowledge that a number of other courts, including judges in this district, have held to the contrary. *See, e.g., Dong v. Chertoff*, C-07-266-SBA, 2007 WL 2601107 (N.D. Cal. 2007); *Konchitsky v. Chertoff*, 2007 WL 2070325, at *3 (N.D. Cal. 2007); *Toor v. Still*, 2007 WL 2028407, at *2 (N.D. Cal. 2007); *Fu v. Gonzales*, C-07-207 (N.D. Cal. 2007); *Dmitriev v. Chertoff*, 2007 WL 1319533, at *3 (N.D. Cal. 2007); *Wu v. Chertoff*, 2007 WL 1223858, at *3 (N.D. Cal. 2007); *Baker v. Still*, 2007 WL 1393750, at *2 (N.D. Cal. 2007); Gelfer v. Chertoff, 2007 WL 902382 (N.D. Cal. 2007); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Yu v. Chertoff*, 2007 WL 1742850 (N.D. Cal.) *Yu v. Brown*, 36 F. Supp. 2d 922, 932 (D.N.M. 1999).

    (B) Denials of discretionary relief

        Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, **no court shall have jurisdiction to review --**

    (i) **any judgment regarding the granting of relief** under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

    (ii) **any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security**, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

    8 U.S.C. § 1255, to which 8 U.S.C. § 1252(a)(2)(B) refers, provides:

    (a) Status as person admitted for permanent residence on application and eligibility for immigrant visa

    **The status of an alien** who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as VAWA self-petitioner **may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe**, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255 (emphasis added).

    The reference in 8 U.S.C. § 1252(a)(2)(B)(ii) to "action of the Attorney General or the Secretary of Homeland Security" encompasses the pace at which USCIS processes an I-485 application. In *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), for example, the United States District Court for the Eastern District of Virginia concluded that the term "action," "encompasses any act or series of acts that are discretionary within the adjustment of status process . . . action . . . encompasses the entire process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." *Safadi*, 466 F. Supp. 2d at 699; *see also Grinberg v. Swacina*, 478 F. Supp. 2d 1350 (S.D. Fla. 2007) (electing "to follow the majority of courts that have dismissed similar actions for lack of subject matter jurisdiction, under the rationale that Sections 242 and 245 of the [INA], 8 U.S.C. §§ 1255(a), 1252(a)(2)(B)(ii) (2006, as amended in 2005, preclude judicial review of any

discretionary 'decision or action' of the Attorney General in immigration matters"); *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007) ("These statutes clearly convey Congress' intent to preclude courts from reviewing discretionary decisions or actions of USCIS regarding I-485 applications"); *Eldeeb v. Chertoff*, 2007 WL 2209231, at *13 (M.D. Fla. 2007) ("Therefore, this Court has elected to interpret the § 1252(a)(2)(B)(ii) jurisdictional bar broadly, and has concluded that the pace of adjudication of an 1485 application is a discretionary function of the CIS"); *see also Borisov v. Gonzales*, CV 06-8240-VBF; *Mustafa v. Pasquerell*, No. Civ.SA05CA-658-XR, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006); *Zaytsev v. Gantner*, No. 04Civ.7101 WHP, 2004 WL 2251665 (S.D.N.Y. Sept. 24, 2004). *But see Dong v. Chertoff*, C-07-266-SBA, 2007 WL 2601107 (N.D. Cal. Sept. 6, 2007) (rejecting argument that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the court of jurisdiction to hearing a claim that an adjudication of an adjustment of status application has been unlawfully withheld); *Cao v. Upchurch*, ___ F. Supp. 2d ___, 2007 WL 2071900, at *2 (E.D. Pa. 2007) ("While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let a petition languish indefinitely"); *Elmaky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330 (N.D. Tex. Mar. 28, 2007); *Duan v. Zamberry*, 2007 WL 626116, at *2 (section 1252(a)(2)(B)(ii) strips jurisdiction to review only those decisions within the Attorney General's discretion as specified in the statute, namely, the decision to adjust status, not the pace of the application processing).

"[T]he ultimate decision to grant or deny an application lies within the discretion of the CIS. It would make little sense to allow a court to review the pace of processing of an application, where the ultimate decision to grant or deny an application is entrusted to the discretion of the agency." *Borisov v. Gonzales*, CV 06-8240-VBF, at 7.

In sum, this Court lacks jurisdiction to review the pace at which the FBI and USCIS complete the name check and adjudicate the plaintiff's I-485 application.

## VII.  CONCLUSION

For the foregoing reasons, the defendants respectfully ask this Court to dismiss the complaint

for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: October 12, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

/s/
EDWARD A. OLSEN
Assistant United States Attorney
Attorneys for Defendants

MOTION TO DISMISS
C07-2462-SC                                    11